## HERRMANN v. NESSLER, and eight other cases.

District Court, S. D. New York. May 25, 1929.

Richard Townsend, of New York City (Richard Townsend, of New York City, William B. Wharton, of Pittsburgh, Pa., and Francis P. Farrell, of New York City, of counsel), for plaintiffs.

Charles Neave, of New York City, for defendant Nessler.

Darby & Darby, of New York City, for defendant Diaz.

Hines, Rearick, Dorr, Travis & Marshall, of New York City, for defendant Art Aseptible Furniture Co.

Abraham I. Wolf, of New York City. (Abraham I. Wolf, of New York City, of counsel), for defendant Bognar Corporation.

Warfield & Watson, of New York City, for defendant E. Frederics, Inc.

Warren S. Orton, of New York City, for defendant Keen Waving Co., Inc.

Howson & Howson, of New York City, for defendant Pausser.

Hulbert & Heermance, of New York City, for defendant Eugene, Limited.

Newell & Spencer, of New York City, for defendant Ingrassia.

Charles Neave, Edward W. Vaill, Willis Fowler, and Henry R. Ashton, all of New York City, of counsel, for all defendants except Bognar Corporation.

THACHER, District Judge. ■ Claim 1 of patent No. 949,272 reads as follows:

"1. A process of waving hair, consisting in first curling the hair, then sprinkling it with a chemical solution, then covering it with a fire proof material and finally heating it."

The breadth of this claim is such as to include within its scope any and every system or process of permanent waving known to the hairdressing art. Its validity cannot be sustained because Herrmann was not the original inventor of permanent hair waving. He acknowledged as much when, some years after being employed by the firm of Nestle, in London, he came to this country and advertised himself as an expert in permanent hair waving. His process patent was issued February 15, 1910. In The American Hairdresser for February of that year he announced that in the March issue of The American Hairdresser he would publish a complete lecture of instruction with illustrations of his now celebrated permanent wave, and in this article he said:

"Herrmann's Permanent Hair Wave has attained so much prominence in the hairdressing world, and given rise to so much controversy that the inventor Mr. Paul Herrmann, the sole possessor of U. S. Patents *for improvements on the Nestle Wave* used in London, England, feels that an explanation is due to the members of the trade in America.

"Mr. Herrmann's business life has been spent in the study and practice of Ladies' Hairdressing and Beauty Culture in the leading European capitals. *He had the pleasure of working for the firm of Nestle in London, who is the founder of this kind of waving on the ladies' heads,* and after much experimental work, he has succeeded in perfecting this scientific process, which is now installed by many first class houses."

He then describes the process, which he says can be pursued by any hairdresser having the apparatus and the formula for the solution. Both in the descriptions and in the illustrations he discloses the process originally practiced by the firm of Nestle, before, during, and after his employment in its London shop.

I am not unmindful of the certainty of proof required to establish priority of invention. In this case that certainty is furnished by contemporaneous publications and advertisements describing the Nestle process, employed by Nessler in London and publicly demonstrated to the trade as early as October, 1906. Witnesses present at this demonstration, employees who were engaged in the practice of the process in Nessler's employ,

and other witnesses, are corroborated by these contemporaneous publications. In one of them, The Hairdressers' Chronicle and Trade Journal, under date of October 13, 1906, the process is described as follows:

"We understand the process consists of first moistening the lady's hair with a special liquid, the nature and constituents of which the inventor retains as his secret. A special roller is then used, and sections of the hair rolled up tightly, after the manner of ordinary 'piping'. Heat is then applied, and after a certain time the hair is released from the rollers, when it assumes the appearance of croquinolle curls."

In later publications the process is illustrated, and some of these illustrations were copied by Herrmann in advertising "his" process to the American trade. The effort of Herrmann to carry his date of invention back of Nessler finds no substantial corroboration in the proofs, and is utterly discredited by his own publications and by the fact that in seeking employment here he represented himself as one having special knowledge of Nestle's process of permanent waving. Conclusion follows that claim 1 is invalid, because the patentee was not the original inventor of the process claimed.

■ Claims 1 and 2 of patent No. 959,527 read as follows:

"1. The herein described device for waving hair, comprising a *perforated metal tube* constituting a curler, an *asbestos tube* adapted to fit over the curler with the curl thereon and an electric drier to be applied over the asbestos tube.

"2. The herein described device for waving hair, comprising a *perforated metal tube* constituting a curler, an *asbestos tube* adapted to fit over the curler with the curl thereon, an electric drier to be applied over the asbestos tube and a heat protector for the head."

In the Nessler Case (E. 41–9) these claims are not relied upon. In the cases against Art Aseptible Furniture Co. (E. 42–13), E. Frederics, Inc. (E. 42–15), Keen Waving Co., Inc. (E. 42–16), Eugene, Ltd. (E. 42–21), and I. Leon Ingrassia (E. 42–23), the record fails to disclose the manufacture, sale, or use by any of the defendants of perforated tubes upon which the hair is curled, or asbestos tubes adapted to fit over the curler, from which it necessarily follows that infringement of these claims has not been shown.

■ Claim 7 of patent No. 1,168,000 reads as follows:

"7. A hair curler and waver comprising

two relatively rotatable members, upon one of which a lock or tress of hair is adapted to be coiled, one end of the hair being tied to one of said members and its other end to the other member, whereby upon rotating one of said members relatively to the other the coils are drawn taut upon the instrument, and means for holding said two members in fixed relation, substantially as and for the purpose specified."

The claim covers what is known in the art as an automatic curler, the purpose of which is, as stated in the specification, "to provide a hair curler and waver with means whereby the lock or tress of hair after being curled upon the curling instrument is adapted to be stretched, or in other words drawn taut, upon the said instrument."

In the prior patent of Nessler (No. 1,-105,595, July 28, 1914) similar devices were disclosed. The purpose of the invention was stated in his specification as follows:

"In processes for curling hair which embrace coiling a small portion of the hair upon a metal curler and then applying lotion and heating or otherwise operating upon the hair, a form of curler has been employed which consists of a small metal tube about three inches long, preferably flattened at one end and preferably having in its walls a number of small perforations. In use a small portion of hair about as thick as the curler is tied near the roots and also tied to the flattened end of the curler. It is then coiled tightly around the curler from the flattened end (the end nearest the head) to the outer end, and there tied down upon the curler. Now in order to secure good waving of the hair, it is necessary to coil the hair extremely tightly upon the curler, which is difficult and which causes strain upon, and even injury to, the hands of the operator.

"The present invention consists in an improved curler of this general type and which after the hair has been coiled around it at a convenient tension, can be readily operated so as to tighten the hair upon itself to any desired degree; and it comprises a tube, a rod-like element within said tube and projecting somewhat from the open end of said tube, and a ratchet and detent or equivalent connection between the tube and the rod-like element whereby each of said members may be rotated on the other in one direction but not in the other."

The same devices were disclosed in Nessler's English patents, No. 23,357 of the year 1912 and No. 10,822 of the year 1913. The only difference between the invention claimed by Nessler in his patent No. 1,105,-595, and the curling rod covered by claim 7 of Herrmann's patent No. 1,168,000, is the absence in Nessler of mechanical means to hold the two members in fixed relation to each other. This, however, cannot be a patentable difference, because when the strand of hair is tightly wound on Nessler's curling rod the tension of the hair itself prevents any movement in one direction, while the ratchet holds the hair tightly coiled upon the rod by preventing any movement in the other direction. The devices are of very simple mechanical construction, and whatever invention there may have been in the conception of a curling rod which would tightly coil the hair and hold it thus tightly coiled during treatment was fully disclosed and claimed in the Nessler patent 1,105,595.

It follows that claim 7 of Herrmann patent, No. 1,168,000, is invalid.

■ Claims 10, 11, 13, and 14 of Herrmann patent, No. 1,499,367, infringement of which is asserted only against Charles Nessler, read as follows:

"10. In an apparatus of the character described, a head shield composed of two pivoted segmental sections each centrally recessed to engage around a lock of hair and means for locking said sections in closed position.

"11. In an apparatus of the character described, a head shield composed of two pivoted segmental sections each centrally recessed to engage around a lock of hair and snap members for closing said sections in closed position."

"13. In an apparatus of the character described, a steaming device comprising a hollow member of heat conducting material, means of liquid absorbing material in said member and means for tightly closing the forward end of the steaming device.

"14. In an apparatus of the character described, a steaming device comprising a hollow member of heat conducting material, means of liquid absorbing material in said member and flexible means at the forward end of said hollow member for tightly closing said end around the curler."

The so-called "head shield" of claims 10 and 11 of this patent is clearly anticipated by the patent of Coulson, No. 1,328,422, issued January 20, 1920, over two years before Herrmann applied for his patent No. 1,499,-367 on February 27, 1923. These devices are disclosed both by Coulson and by Herrmann as means not only for shielding the head from the heat which radiates from the lower end of the heating tube, but also for sealing the lower end of the heating tube. Hence Herrmann presumably inserted claims

13 and 14 to cover a combination of two old elements—that is, the hollow member of heat conducting material and the means of liquid absorbing material therein—with what he claimed as new, namely, means for tightly closing the forward end of the steaming device, i. e., the two pivoted segmental sections each centrally recessed to engage around a lock of hair and snap members for closing said sections in closed position. Thus the combination was of two concededly old elements and one element claimed to be new, but which is shown to have been clearly anticipated in Coulson, where all of the elements in these Herrmann claims are disclosed in combination.

Result is that claims 10, 11, 13, and 14 of Hermann patent, No. 1,499,367, are invalid.

It follows that the defendants are entitled to decrees in each of these cases dismissing the bill of complaint, with costs. Enter decrees accordingly.